***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Claims Consulting Associates, Inc. is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff suffered an injury by accident arising out of and in the course of his employment with the defendant-employer on May 29, 2001, the compensability of which the defendants have admitted.
5. Plaintiff's average weekly wage is $540.00, yielding a compensation rate of $360.02.
 *********** EXHIBITS (a) Stipulated Exhibit 1: Pre-Trial Agreement, Industrial Commission Forms, and Plaintiff's Discovery Responses
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records (A CD-R containing plaintiff's medical records was submitted at the hearing before the Deputy Commissioner. Following that hearing, a CD-R containing a revised set of stipulated medical records was tendered by the parties in substitution of the one submitted at the hearing.)
 *********** ISSUES (a) Whether plaintiff's erectile dysfunction is causally related to his admittedly compensable injury by accident?
 (b) Whether plaintiff's periodontal disease is causally related to his admittedly compensable injury by accident? *Page 3 
 (c) Whether vocational rehabilitation services are reasonable and medically necessary to lessen the period of plaintiff's disability?
 (d) Whether plaintiff is entitled to ongoing total disability compensation until defendants are permitted to terminate compensation by plaintiff's return to work or order of the Commission?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven years old. Plaintiff has a high school education.
2. Plaintiff's work history includes small engine repair, auto mechanics, and heavy truck repair. For the 16 years prior to his admittedly compensable injury by accident, plaintiff worked as an ironworker and welder.
3. On May 29, 2001, plaintiff was working as an ironworker for defendant-employer on a construction site. While plaintiff was installing an iron staircase approximately two-and-a-half stories below ground level, a concrete tub at ground level tipped over and dumped wet concrete into the stairwell and onto plaintiff's neck. The concrete tub tipped over due to a crane operator entangling the tub with a piece of steel. As a result of this accident, plaintiff suffered an injury to his cervical spine.
4. Following conservative treatment that did not improve his condition, plaintiff underwent an MRI scan on June 13, 2001.
5. On June 21, 2001, plaintiff presented to Dr. Russell H. Amundson, a neurosurgeon. After reviewing plaintiff's case, including the MRI, Dr. Amundson concluded that plaintiff *Page 4 
suffered from a disc herniation at C6-C7 and nerve injury at C5-C6 that was causing pain, numbness, and loss of sensation in the right upper extremity in the C6 nerve distribution.
6. On July 13, 2001, Dr. Amundson performed a two-level allograft cervical fusion at C5-C6 and C6-C7 with the use of a cervical plate. The surgery was helpful in relieving the pain in plaintiff's arms, but he continued to experience pain in his neck and right shoulder.
7. Plaintiff continued to treat with Dr. Amundson through the remainder of 2001 and into 2002. Plaintiff participated in physical therapy; however, it was a painful experience. On April 25, 2002, Dr. Amundson opined that plaintiff had reached maximum medical improvement. Plaintiff had less than 25% of the normal range of motion in his neck and only about 50% of the normal range of motion in his right shoulder with pain that prevented full range of motion. At that time, Dr. Amundson diagnosed plaintiff with myofascial pain of the right shoulder and referred him for chronic pain management.
8. On December 11, 2002, plaintiff presented to Dr. Michael S. Garrison, an internist, for management of his pain medications. As of the hearing before the Deputy Commissioner, plaintiff's treatment with Dr. Garrison was ongoing.
9. On May 13, 2003, plaintiff complained of erectile dysfunction for which Dr. Garrison prescribed Viagra. Plaintiff's complaint of erectile dysfunction occurred approximately two years after his injury by accident.
10. Dr. Garrison testified that plaintiff's erectile problem is related to the injury. However, when asked the basis of his opinion, Dr. Garrison responded, "The fact that he [plaintiff] had no problem prior to the injury is the main basis for that opinion." While Dr. Garrison later testified that some of the erectile dysfunction may have been from medication, he never identified any drug taken by plaintiff as having erectile dysfunction as a side effect. When *Page 5 
considered as a whole, the Commission finds Dr. Garrison's opinion, which is based primarily upon the sequence of events, to be speculative and affords it little weight.
11. On August 15, 2004, plaintiff presented to Dr. Todd Carter, a dentist. Dr. Carter diagnosed plaintiff as suffering from advanced periodontal disease. Plaintiff requested, and Dr. Carter agreed, that he be fitted for full dentures, which required extraction of all of plaintiff's remaining teeth. Dr. Carter testified that the alternative to extracting plaintiff's teeth for dentures would have been periodontal therapy, including surgery, root canals and crowns, which would have been very expensive.
12. Plaintiff had approximately three or four teeth extracted per week until all 22 of his remaining teeth had been removed. Plaintiff now requires a full set of dentures.
13. Dr. Carter testified that a side effect of the Atenolol medication taken by plaintiff is reduced saliva production. Saliva acts as a neutralizer of acids in foods and drinks that would otherwise break down teeth. Dr. Carter testified that plaintiff suffered from reduced saliva production resulting in dry mouth that was causing the exposed roots to decay rapidly around almost every tooth that he had remaining.
14. With regard to the cause of plaintiff's advanced periodontal disease, Dr. Carter testified that plaintiff's medication, smoking and neglect were the significant contributing factors in the progression of the condition. Dr. Carter further testified that plaintiff's advanced periodontal disease was definitely more severe and more destructive because of the medication taken for his compensable injury.
15. The greater weight of the evidence of record establishes and the Commission so finds that plaintiff's advanced periodontal disease, which resulted in the extraction of plaintiff's remaining 22 teeth, is causally related to his accident at work on May 29, 2001. *Page 6 
16. Dr. Garrison testified that plaintiff continues to be unable to work due to his compensable injury, and thus Dr. Garrison has not released plaintiff to attempt to return to work at the present time. Dr. Garrison opined that plaintiff will never be employable again due to his injury.
17. Dr. O. Delano Curling, Jr., a neurosurgeon, conducted two independent medical examinations of plaintiff at defendants' request. Dr. Curling opined that plaintiff was capable of work in a sedentary to light capacity, at a minimum. Dr. Curling further opined that plaintiff would benefit from vocational rehabilitation assistance in an attempt to facilitate plaintiff's return to gainful employment. The Commission gives greater weight to the opinion of Dr. Curling than that of Dr. Garrison on the issue of the feasibility of vocational rehabilitation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The greater weight of the competent evidence of record establishes a causal relationship between plaintiff's injury by accident of May 29, 2001, and his advanced periodontal disease that resulted in the extraction of his remaining 22 teeth, and thus this condition is compensable.
2. The greater weight of the competent evidence of record fails to establish a causal relationship, beyond mere speculation, between plaintiff's injury by accident of May 29, 2001, and his erectile dysfunction, and thus this condition is not compensable.
3. As a result of plaintiff's compensable injury, plaintiff is entitled to ongoing total disability compensation. N.C. Gen. Stat. § 97-29. *Page 7 
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including, but not necessarily limited to, payment for dentures as directed by Dr. Carter as well as a Functional Capacity Evaluation and subsequent vocational rehabilitation. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The Commission may assign more weight and credibility to certain testimony than to other testimony. Moreover, if the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal. Dolbow v. Holland Indus., Inc., 64 N.C. App. 695,308 S.E.2d 335 (1983), cert. denied, 310 N.C. 308, 312 S.E.2d 651
(1984).
 * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee previously approved by the Commission, defendants shall continue to pay ongoing total disability compensation to plaintiff until further Order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including, but not necessarily limited to, payment for dentures as directed by Dr. Carter as well as vocational rehabilitation. In order to lessen the period of disability, plaintiff must cooperate and undergo a Functional Capacity Evaluation and *Page 8 
subsequent vocational rehabilitation assessment to evaluate his strengths and the feasibility of his participation in vocational rehabilitation and ultimate participation in an appropriate individualized plan for services.
3. Plaintiff's claim for compensation for his erectile dysfunction condition is denied.
4. Defendants shall pay the costs.
This the ___ day of November 2007.
S/__________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________________ DIANNE C. SELLERS COMMISSIONER *Page 1